UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MILTON BARROS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 24-12418-GAO |
| v. ) | |
| ) | |
| MASSACHUSETTS STATE POLICE ) | |
| TROOPERS ROBERT REGO and ) | |
| ANTHONY GRASSINI, JR., ) | |
| ) | |
| Defendants. ) | |
| ) | |

REPORT AND
RECOMMENDATION
ON MOTION TO DISMISS
[Docket No. 34]

March 9, 2026

Boal, M.J.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Massachusetts State Police Troopers Robert Rego and Anthony Grassini, Jr.,[1] have moved to

dismiss all remaining claims in plaintiff Milton Barros' complaint arising from a traffic stop and

subsequent prosecution.  Docket No. 34.  For the following reasons, I recommend granting the

motion.[2]

---

[1] The Defendants are represented by separate counsel but filed a joint memorandum.

[2] On September 10, 2025, Judge OToole referred this case to the undersigned for full pretrial,
including dispositive motions.  Docket No. 18.

1

I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

On November 27, 2022, while traveling on Route 24 in Middleboro, Massachusetts, Milton Barros passed a Massachusetts State Police ("MSP") cruiser, which subsequently pulled behind him and initiated a traffic stop. Docket No. 1 ¶¶ 9, 18-20. Both Barros' vehicle and the cruiser pulled to the side of the road and parked. Id. ¶ 21. Defendant Robert Rego approached Barros' passenger side door and informed him that the basis for the stop was that his rear license plate cover obstructed the view of his license plate number. Id. ¶¶ 23-24. Barros disagreed. Id. ¶ 24. Although his vehicle featured several modifications, including black-tinted front and rear light covers and a plastic rear license plate cover, Barros had checked the legality of all such modifications. Id. ¶¶ 10-11. Further, he alleges that "other drivers could clearly see the numbers and letters on his rear license plate." Id. ¶ 12.

Rego requested Barros' driver's license. Id. ¶ 25. Barros refused based on his belief that the stop was illegal and lacked a sufficient basis. Id. Rego repeated his request and the reasons for the stop, and Barros again refused to produce his license. Id. ¶ 26. Defendant Anthony Grassini, who appeared during the encounter, joined Rego in ordering Barros to exit his vehicle. Id. ¶¶ 27-28. Barros complied. Id. ¶ 28. The Troopers then handcuffed Barros and placed him in the back seat of the cruiser. Id. From the back seat, Barros observed the cruiser's onboard computer. Id. ¶ 29. He alleges that the information on the computer confirmed that his license, insurance, registration, and inspection status were all active. Id.

Shortly after placing Barros in the cruiser, Grassini requested Barros' license for a third time, and advised that providing it would allow his release with a citation. Id. ¶ 30. Barros

---

[3] In ruling on Defendants' motion to dismiss, this Court construes "the well-pleaded facts of the complaint in the light most favorable to the plaintiff[]." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011).

informed Grassini that his license was in his vehicle's front console.  Id. ¶ 31.  Grassini retrieved

the license and placed a call on his cell phone, during which he consulted with a supervisor about

Barros' release.  Id. ¶¶ 32-33.  Instead of releasing Barros, the Troopers transported him to the

nearby MSP Barracks for booking and processing.  Id. ¶ 34.  Barros was released later that

evening.  Id. ¶ 40.

Barros was charged with three counts:  motor vehicle operator refusal to identify,

pursuant to M.G.L. c. 90, § 25; number plate violation, pursuant to M.G.L. c. 90, § 6; and lights

violation, pursuant to M.G.L. c. 90, § 7.  Id. ¶ 43.  Judge Neil A. Hourihan subsequently

dismissed all three counts.  Id. ¶¶ 42-43.

On September 21, 2024, Barros filed a twenty-three count complaint, alleging various

civil rights and tort claims.  Docket No. 1 ¶¶ 44-105.  On December 23, 2025, the parties filed a

joint stipulation of dismissal with respect to Counts 17 through 23.  Docket No. 33.  That same

day, Defendants filed a motion to dismiss for failure to state a claim.  Docket No. 34.  Barros

filed an opposition on February 11, 2026, to which Defendants filed a reply.  Docket Nos. 38; 41.

On March 5, 2026, this Court held a hearing on the motion.  Docket No. 46.

II.    STANDARD OF REVIEW

A complaint must contain only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability

3

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Id.

In assessing the sufficiency of the complaint, "an inquiring court must first separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court must then determine "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (citations omitted).

III.    DISCUSSION

The remaining counts in the complaint allege that Defendants committed the following violations:

- Fourth Amendment violation under 42 U.S.C. § 1983 (Count 1);

- Violation of Article XIV of the Massachusetts Declaration of Rights under M.G.L. c. 12, § 111 (Count 2);

- First Amendment violation under 42 U.S.C. § 1983 (Count 3);

- Violation of Articles XVI of the Massachusetts Declaration of Rights under M.G.L. c. 12, § 111 (Count 4);

- False imprisonment under common law, 42 U.S.C. § 1983, and M.G.L. c. 12, § 111 (Counts 5-7);

- False arrest under common law, 42 U.S.C. § 1983, and M.G.L. c. 12, § 111 (Counts 8-10);

- Malicious prosecution under common law, 42 U.S.C. § 1983, and M.G.L. c. 12, § 111 (Counts 11-13); and

- Abuse of process under common law, 42 U.S.C. § 1983, and M.G.L. c. 12, § 11l (Counts 14-16).

Docket No. 1 ¶¶ 44-105.

A. Fourth Amendment Claim (Count 1)

"To recover under § 1983, a plaintiff must prove that a deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States was carried out by persons acting under color of state law." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (quoting 42 U.S.C. § 1983). It is undisputed that Defendants were acting under color of state law as police officers employed by the MSP during the course of the events that gave rise to this action. The remaining issue is whether they deprived Barros of a constitutional right. Barros alleges, inter alia, that Defendants' actions violated his right to be secure from unreasonable searches and seizures under the Fourth Amendment, as applicable to the states under the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

1. *The Traffic Stop*

Because, under the Fourth Amendment, "a traffic stop constitutes a seizure of both the stopped vehicle and its occupants . . . a traffic stop must satisfy a standard of objective reasonableness." United States v. Arnott, 758 F.3d 40, 43 (1st Cir. 2014) (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)) (additional citation omitted). "A traffic stop is constitutional if an officer has a reasonable suspicion of unlawful conduct involving a motor vehicle or its operation," such as a traffic violation or infraction. United States v. Jenkins, 680 F.3d 101, 104 (1st Cir. 2012). In evaluating whether reasonable suspicion exists, the court applies "an objective standard, rather than assessing the subjective intent of an individual officer," and considers the "'totality of the

surrounding circumstances.'"  United States v. Tiru-Plaza, 766 F.3d 111, 116 (1st Cir. 2014) (quoting United States v. Ruidiaz, 529 F.3d 25, 29 (1st Cir. 2008)).

Barros states that his vehicle contained "several distinct features," including tinted black front and rear light covers and a rear license plate that had a plastic cover.  Docket No. 1 ¶ 10. To support his claim that Defendants lacked reasonable suspicion for the traffic stop, Barros asserts that the registration numbers on his license plate remained "clearly" visible through the plastic cover.  See Docket No. 38 at 3 (citing Docket No. 1 ¶ 12).  He also asserts that the black light tints were checked for legality and that other drivers could "see when the lights were illuminated at any level of brightness."  Id. (citing Docket No. 1 ¶ 11).

Although Rego initially informed Barros that he was stopped due to the license plate cover, id. ¶ 24, he was ultimately charged with, among other things, both lights and license plate violations under M.G.L. c. 90, §§ 6 and 7.  Based on the totality of the circumstances, including Barros' statements concerning the light modifications, this Court will consider all vehicle modifications in its analysis.  Barros' acknowledgment of these modifications provides a factual basis to support a finding of reasonable suspicion.  That charges based on the modifications were later dismissed does not mean that Defendants lacked reasonable suspicion to stop the vehicle. Because a traffic stop requires only an objective, articulable basis for believing a violation occurred, this Court finds that the lights and license plate modifications provided sufficient reasonable suspicion to perform the stop.  Accordingly, any Fourth Amendment claim based on the stop should be dismissed.

2. *The Arrest*

"The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause."  Santiago v. Fenton, 891 F.2d 373, 383

(1st Cir.1989).  "If an arrest is supported by probable cause, the arrestee's constitutional rights are not offended."  Grassia v. Piers, 735 F. Supp. 2d 1, 7 (D. Mass. 2010).  "The probable cause determination turns on 'whether . . . the facts and circumstances within [the police officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that' a crime was committed or was being committed."  Deaton v. Town of Barrington, 100 F.4th 348, 356 (1st Cir. 2024) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "Probable cause is a 'fluid concept' and 'not a high bar.'"  Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir. 2021) (citations omitted).  The finding of probable cause need not be "ironclad, or even highly probable," rather it "need only be reasonable."  United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999).  "[O]nce police officers are presented with probable cause to support an arrest, no further investigation is required at that point."  Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004).

Here, after Barros twice refused to produce a physical driver's license, Defendants had the immediate statutory authority to take him into custody.  Defendants therefore had probable cause to arrest and detain him.  See Tahoun v. Barrasso, No. 24-CV-12756-DJC, 2025 WL 2254449, at *3 (D. Mass. July 21, 2025) (probable cause established by violation of M.G.L. c. 90, § 25); Blackwell v. Everett Police Dep't, No. CV 25-11082-RGS, 2025 WL 1414136, at *2 (D. Mass. May 15, 2025) (same).  That Barros eventually, post-seizure (being handcuffed and placed in the cruiser), directed officers to his license does not negate the prior completed violations of the statute.  Under Massachusetts law, "[a]ny person who, while operating or in charge of a motor vehicle, . . . refuses, on demand of [any uniformed police] officer, to produce his license to operate such vehicle or his certificate of registration . . . without a reasonable excuse . . . shall be punished by a fine."  M.G.L. c. 90, § 25.  However, Massachusetts statute

also grants an officer the power to "arrest without a warrant . . . any person who, while operating or in charge of a motor vehicle, violates the provisions of section twenty-five of chapter ninety." M.G.L. c. 90, § 21.  The relevant statutes provide no grace period or other language that would suggest a refusal is somehow undone by later production of the license.  See United States v. Brunell, 320 F. Supp. 3d 246, 247 (D. Mass. 2018) ("Generally, a crime is complete as soon as every element in the crime occurs") (quotation and citation omitted).  Accordingly, because the arrest was predicated on a clear statutory violation, this Court finds that Defendants had probable cause to arrest and detain Barros.  Accordingly, this Court recommends that Barros' Fourth Amendment claim be dismissed.

   B.  False Arrest And Imprisonment Under Common Law And § 1983 (Counts 5, 6, 8, 9)

   The torts of "[f]alse arrest and false imprisonment overlap; the former is a species of the latter."  Wallace v. Kato, 549 U.S. 384, 388 (2007).  Accordingly, when a complaint asserts distinct § 1983 claims for false arrest and false imprisonment, it is "most appropriate to view the allegations as stating a single claim for violation of [a plaintiff's] Fourth Amendment right to be free from an unreasonable seizure."  Peña-Borrero v. Estremeda, 365 F.3d 7, 13 n.8 (1st Cir. 2004).  In assessing both claims under § 1983, courts perform their analysis under the law of the state in which the arrest occurred.  See Bird v. City of New Bedford, No. 17-12159-FDS, 2019 WL 4394914, at *4 (D. Mass. Sept. 13, 2019) (quoting McLennon v. City of New York, 171 F. Supp. 3d 69, 87 (E.D.N.Y. 2016)).

   Both false arrest and false imprisonment have the same elements under Massachusetts law:  "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement."  Abubardar v. Gross, 542 F. Supp. 3d 69, 77 (D. Mass. 2021) (quoting Bertram v. Viglas, No. 19-cv-11298,

2020 WL 1892187, at \*9 (D. Mass. Apr. 16, 2020)) (false arrest); Sietins v. Joseph, 238 F. Supp.

2d 366, 381 (D. Mass. 2003) (quoting Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 55 (D. Mass.

2000)) (false imprisonment).  Although probable cause is not an element of these torts, it is

required for an arrest to be lawful.  Abubardar, 542 F. Supp. 3d at 77; Sietins, 238 F. Supp. 2d at

381.

As discussed above, the complaint plausibly alleges that Defendants had probable cause

to arrest Barros, thereby precluding his common law and § 1983 claims of false arrest and false

imprisonment.  Accordingly, this Court recommends allowing the motion to dismiss as to these

claims.

C.  Malicious Prosecution Under Common Law And § 1983 (Counts 11, 12)

Under Massachusetts law, "[t]o make out a claim for malicious prosecution, a plaintiff

must [allege plausibly]:  '(1) the institution of criminal process against the plaintiff with malice;

and (2) without probable cause; and (3) the termination of the criminal proceedings in favor of

the plaintiff.' "  Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 405 (2002)

(internal quotation marks and citations omitted).

Although the criminal proceedings against Barros terminated in his favor, the complaint

fails to allege sufficient facts to support malicious prosecution claims.  As discussed above, the

common law claim is not plausibly pled because there was probable cause for the infractions

charged against Barros.  In addition, Barros alleges, without more, that Defendants engaged in

malicious prosecution when they "commenced and continued the criminal proceeding against

[him] with actual malice."  Docket No. 1 ¶¶ 89, 94.  Such conclusory allegations are insufficient

to support the requisite element of malice.  Accordingly, Barros' common law malicious

prosecution claim should be dismissed.

State law malicious prosecution claims do not become constitutional claims simply because they are "garbed in the regalia of § 1983." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996). In some circumstances, however, the Fourth Amendment may permit the assertion of a § 1983 claim for malicious prosecution. See Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 358 (D. Mass. 2002) (citing Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)). To prevail on a § 1983 claim for malicious prosecution, the plaintiff must allege plausibly that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Aaron v. City of Lowell, 666 F. Supp. 3d 102, 130 (D. Mass. 2023) (citation omitted). "There is no 'actual malice' element to the constitutional claim in this Circuit." Id.

A plaintiff must satisfy causation by "demonstrat[ing] that law enforcement officers were responsible for his continued, unreasonable pretrial detention[.]" Id. (quoting Hernandez-Cuevas v. Taylor, 723 F.3d 91, 100 (1st Cir. 2013)). This link is established by showing that officers "made, influenced, or participated in the decision to prosecute." Id. (quoting Sykes v. Anderson, 625 F.3d 294, 308-309 (6th Cir. 2010)). These actions may include instances when, for example, an officer (1) lies to or misleads prosecutors; (2) fails to disclose exculpatory evidence, or (3) unduly pressures the prosecutor to seek an indictment. Id. (citing Hernandez-Cuevas, 723 F.3d at 102). Consequently, to prove causation, the plaintiff must show that the officers' actions or statements "amounted to deliberate falsehood or reckless disregard for the truth." Id. (quotation and citation omitted). While there is no "actual malice" element, the First Circuit has explained that "[t]his kind of reprehensible behavior seems indistinguishable from the common law element of malice." Id.

Barros' § 1983 claim also fails because there was probable cause for the charges against him.  In addition, his conclusory allegations about the officers' conduct do not meet the standard for reprehensible behavior sufficient to adequately plead a § 1983 claim.  Accordingly, I recommend allowing dismissal as to these claims.

D.  Abuse of Process Under Common Law And § 1983 (Counts 14, 15)

The First Circuit has not recognized abuse of process as a cognizable civil rights violation under § 1983 and, therefore, that claim fails as a matter of law.  See DeGree v. City of Lowell, No. CV 24-12415-NMG, 2025 WL 2347548, at *10 (D. Mass. July 15, 2025), report and recommendation adopted, No. CV 24-12415-NMG, 2025 WL 2347433 (D. Mass. Aug. 12, 2025)(citing Santiago, 891 F.2d at 388).

Any common law claim for abuse of process fails.  The elements of an abuse of process claim are (1) the defendant used process (2) for an ulterior or illegitimate purpose (3) resulting in damage.  Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010). "[P]robable cause is irrelevant to an abuse of process claim."  Gutierrez, 437 Mass. at 407–408. Process is abusive when used "to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club."  Cohen v. Hurley, 20 Mass. App. Ct. 439, 442 (1985).  See Scholz v. Goudreau, 901 F.3d 37, 48 (1st Cir. 2018) (" bad intentions of a defendant are irrelevant if that defendant 'has done nothing more than carry out the process to its authorized conclusion'") (quoting Cohen, 20 Mass. App. Ct. at 442).

Here, Barros' complaint alleges simply that "Defendants used process for an ulterior or illegitimate purpose resulting in damage to Mr. Barros."  Docket No. 1 ¶ 101.  It fails to identify a specific collateral advantage sought by the officers that was outside the scope of the criminal

proceedings.  Although Barros argues in his brief that Defendants sought to "retaliate" against him, Docket No. 38 at 9, the complaint itself establishes that the arrest and prosecution addressed a criminal violation, a legitimate use of legal process.  The complaint is devoid of any factual allegations that Defendants sought to obtain a collateral advantage, not properly involved in the proceeding itself.  Accordingly, I recommend dismissing Counts 14 and 15.

E.  Claims Under M.G.L. c. 12, § 111 (Counts 2, 4, 7, 10, 13, 16)

Barros' claims under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 111 ("MCRA"), should also be dismissed.  To establish a claim under the MCRA, a plaintiff must show that "'his exercise or enjoyment of rights secured by the Constitution or law of either the United States or of the Commonwealth' was either 'interfered with, or attempted to be interfered with' through 'threats, intimidation or coercion.'"  Finamore v. Miglionico, 15 F.4th 52, 59 (1st Cir. 2021) (quoting Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989)).  Because Barros has not plausibly alleged that any constitutional violation occurred, any MCRA claims against Defendants should be dismissed.  See Morrissey v. Town of Agawam, 883 F. Supp. 2d 300, 314 (D. Mass. 2012).

Even if the complaint did establish a lack of reasonable suspicion or probable cause, Barros' MCRA claims still fail.  In general, "a 'direct violation' of a person's constitutional rights, standing alone, does not implicate the MCRA."  Sepulveda v. UMass Corr. Health Care, 160 F. Supp. 3d 371, 390 (D. Mass. 2016) (citing Longval v. Comm'r of Corr., 404 Mass. 325, 333 (1989)).  "Instead, the MCRA 'contemplates a two-part sequence:  liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do."  Sepulveda, 160 F. Supp. 3d at 390 (quoting Morrissey, 883 F. Supp. 2d at 314) (additional citation omitted).  Threats

mean the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Osman v. Dwan, Civil Action No. 20-11356-NMG, 2021 WL 11505292, at *7 (D. Mass. July 30, 2021) (quotation and citation omitted), report and recommendation adopted, 20-11356-NMG, Docket No. 31 (D. Mass. Sept. 10, 2021). Intimidation means "putting a person in fear for the purpose of compelling or deterring his or her conduct." Morrissey, 883 F. Supp. 2d at 314. Coercion means the "application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." Id. Under this construction, courts have recognized that "a plaintiff cannot rely on the same conduct to show both the right that was interfered with and the threats, coercion, or intimidation." Osman, 2021 WL 11505292 at *7 (citing Santiago v. Keyes, 890 F. Supp. 2d 149, 159 (D. Mass. 2012)).

Here, Barros does not adequately allege that Defendants performed the traffic stop and subsequent arrest as a means of intimidation, coercion, or threat to interfere with a separate protected right. To the extent he asserts the allegedly unlawful stop and seizure itself constitutes evidence of intimidation, coercion, or threat and was a constitutional violation, those allegations cannot support an MCRA claim. Barros alleges no more.

As to the claims of malicious prosecution and abuse of process, because the complaint's factual assertions do not adequately allege these claims, as described above, they cannot support the same under the MCRA. Accordingly, this Court recommends dismissing all of Barros' MCRA claims.

F.   First Amendment Claims Under 42 U.S.C. § 1983 And MCRA (Counts 3 And 4)

Barros alleges that Defendants violated his First Amendment rights by retaliating against him for engaging in protected expression and petitioning activity. Docket No. 38 at 7. In his complaint, he states that "[r]etaliation was a substantial or motivating factor behind the stop,

detainment, arrest, charge, and prosecution." Docket No. 1 ¶¶ 56, 63. As explained in his opposition, Barros alleges that the protected activity was his verbal opposition to the traffic stop and his assertion of legal rights. Docket No. 38 at 7.

The First Amendment to the U.S. Constitution and Article XVI of the Massachusetts Declaration of Rights protect an individual's freedom of speech. U.S. Const. amend. I; Mass. Const. pt. 1, art. 16. "Massachusetts courts have not identified any substantive difference between free speech protection under the Federal constitution and the Massachusetts constitution." Jakuttis v. Town of Dracut, Massachusetts, 656 F. Supp. 3d 302, 331 n.17 (D. Mass. 2023). Accordingly, "the criteria which have been established by the United States Supreme Court for judging claims arising under the First Amendment . . . are equally appropriate to claims brought under cognate provisions of the Massachusetts [c]onstitution." Id. (quoting Smith v. Comm'r of Mental Retardation, 409 Mass. 545, 552 (1991)). Claims of retaliation for the exercise of First Amendment rights are cognizable under 42 U.S.C. § 1983. Tahoun, 2025 WL 2254449 at *6.

To prevail on a First Amendment claim for retaliatory actions, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" Nieves v. Bartlett, 587 U.S. 391, 398 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). To allege adequately a violation of these rights, the plaintiff must plead that he (1) "engaged in constitutionally protected conduct," (2) he was "subjected to an adverse action by [defendant]," and (3) "the protected conduct was a substantial or motivating factor in the adverse action." Bixby v. Town of Rehoboth, No. CV 23-10334-MPK, 2024 WL 4979147, at *6 (D. Mass. Dec. 4, 2024) (quoting Gattineri v. Town of Lynnfield, 58 F.4th 512, 514 (1st Cir. 2023)). A plaintiff pressing retaliatory prosecution must "plead and prove the

absence of probable cause for the underlying criminal charge." Nieves, 587 U.S. at 400 (citing Hartman, 547 U.S. at 263, 265-266). A "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest," with a "narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." Nieves, 587 U.S. at 402, 406.

As a threshold matter, Barros' verbal dispute regarding the basis for the traffic stop is protected speech under the First Amendment. See City of Houston, Tex. v. Hill, 482 U.S. 451, 462-463 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state"). Because the complaint alleges sufficient facts to establish that Defendants had probable cause to arrest and charge Barros, however, the question here is whether his arrest falls under the narrow qualification described in Nieves. Under this exception, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Nieves, 587 U.S. at 407.

The complaint, however, fails to allege sufficient facts to show that a similarly situated individual who violated M.G.L. c. 90, §§ 21, 25, but was not engaged in verbal opposition to the traffic stop would not have been arrested. See Tahoun, 2025 WL 2254449, at *6. The complaint offers no comparative evidence suggesting that officers typically exercise their discretion to forgo custodial arrests for refusals to produce a license. This analysis extends to Barros' Article XVI claims. See Jakuttis, 656 F. Supp. at 331 n.17. Accordingly, this Court recommends granting dismissal of Counts 3 and 4.

IV.    RECOMMENDATION

For the foregoing reasons,[4] this Court recommends granting the motion.

V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).


/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

---

[4] Because this Court recommends granting Defendants' motion to dismiss, I do not reach Defendants' argument that they are entitled to qualified immunity.

16